## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPRO COMPUTERS, INC., | |
| Plaintiff, | C.A. No. 13-1937-LPS |
| v. | **REDACTED PUBLIC VERSION** |
| LXE, LLC, *et al.*, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR ATTORNEYS' FEES

OF COUNSEL:

WITTEN LAW, LTD.
Jason B. Witten (admitted *pro hac vice*)
Blackwell House, Guildhall Yard
London, EC2V 5AE
UK
UK: 44-203-287-9500
US: (949)485-5055
j.witten@wittenltd.com

Thomas M. Dunlap
DUNLAP WEAVER, PLLC
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20005
(202) 316-8558
tdunlap@dunlapweaver.com

Henry E. Gallagher, Jr. (#495)
Ryan P. Newell (#4744)
Michael R. Grandy (#6036)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
hgallagher@connollygallagher.com
rnewell@connollygallagher.com
mgrandy@connollygallagher.com

*Attorneys for Plaintiff,*
*Ampro Computers, Inc.*

Dated: August 14, 2017

REDATED PUBLIC VERSION FILED: August 21, 2017

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................................... ii

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT .................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT .............................................................................................................................. 3

      I.       DEFENDANTS' MOTION IS PREMATURE ................................................................. 3

            A.     Consideration of the Motion Should Be Deferred for Reasons of
Efficiency .......................................................................................................... 4

            B.     Defendants' Fee Request Is Subject to Offsetting Claims ......................... 6

            C.     Defendants' Motion Should be Deferred to Avoid
Piecemeal Litigation ....................................................................................... 8

            D.     It Is Possible This Court Will Hold Ampro Is the Prevailing Party ......... 10

      II.     DEFENDANTS' FEE REQUEST IS EXCESSIVE ........................................... 10

CONCLUSION .......................................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Asahi Glass Co., Ltd. v. Guardian Industries Corp.,*
    2013 WL 936451 (D. Del. Mar. 11, 2002) ...................................................................... 10

*Branker v. Hotel on The Cay TimeShare Ass'n,*
    2009 WL 2244620 (D.V.I. July 24, 2009) ....................................................................... 3

*Cleverley v. Ballantyne,*
    2014 WL 317775 (D. Nev. Jan. 28, 2014) ....................................................................... 8

*Comrie v. Enterasys Networks, Inc.,*
    2004 WL 936505 (Del. Ch. Apr. 27, 2004) ..................................................................... 3

*Days Inns Worldwide, Inc. v. DB Vancouver, LLC,*
    2015 WL 3938883 (D.N.J. June 25, 2015) ...................................................................... 7

*Deisler v. MacCormack Aggregates, Co.,*
    54 F.3d 1074 (3d Cir. 1995) ............................................................................................ 3

*Devex Corp. v. Gen. Motors Corp.,*
    494 F. Supp. 1369 (D. Del. 1980) ................................................................................. 10

*Doe v. Nevada,*
    2008 WL 2512834 (D. Nev. June 19, 2008) .................................................................... 8

*Duff v. Innovative Discovery LLC,*
    2012 WL 6096586 (Del. Ch. Dec. 7, 2012) .................................................................... 7

*Greenstar, LLC v. Heller,*
    934 F. Supp. 2d 672 (D. Del. 2013) ............................................................................... 3

*McKenna v. Ferraira,*
    1996 WL 711019 ........................................................................................................... 10

*In re Paoli R.R. Yard PCB Litig*
    221 F.3d 449 (3d Cir. 2000) ............................................................................................ 3

*Johnson v. Ga. Highway Express, Inc.,*
    488 F.2d 714 (5th Cir. 1974) ........................................................................................... 3

*Mahani v. EDIX Media Grp., Inc.,*
    935 A. 2d 242 (Del. 2007) ............................................................................................... 3

*Masalosalo v. Stonewall Ins. Co.,*
    718 F.2d 955 (9th Cir. 1983) ........................................................................................... 3

*Obin v. District No. 9 of the Int'l Ass'n of Machinists & Aerospace Workers,*
    651 F.2d 574 (8th Cir. 1981) ............................................................................... 3

*Rutherford v. Palo Verde Health Care Dist.,*
    2015 WL 12864244 (C.D. Cal. Mar. 13, 2015) ................................................. 9

*Schwarz v. Folloder,*
    767 F.2d 125 (5th Cir. 1985) ............................................................................. 3

*Seber v. Daniels Transfer Co.,*
    618 F. Supp 1311 (W.D. Pa. 1985) ................................................................ 10

*State ex rel. Hirst v. Black,*
    46 Del. 295, 83 A.2d 678 (Del. Super. Ct. 1951) ............................................ 7

*Travelodge Hotels, Inc. v. BO-ED Inc.,*
    2007 WL 8053668 (D.N.J. Mar. 19, 2007)..................................................... 7

## NATURE AND STAGE OF THE PROCEEDINGS

This action for breach of contract was commenced on November 29, 2013.  The parties are the plaintiff, Ampro Computers, Inc. ("Ampro"), and the defendants, LXE, LLC ("LXE"), and Metrologic Instruments, Inc. d/b/a Honeywell Scanning and Mobility ("HSM," and collectively with LXE, "Defendants").  Deposition discovery is currently ongoing, and this Court has scheduled trial for May 2018.  (D.I. 156)

On June 28, 2017, Defendants filed a motion for attorneys' fees (D.I. 163, "Motion"), and an opening brief (D.I. 164, "Op. Br."), by which they seek to recover attorneys' fees and costs that they allege they incurred in connection with their defense of Ampro's claim for breach of the International Manufacturing and Purchase Agreement attached as Exhibit 1 to the affidavit of their counsel in support of the Motion  (D.I. 165-1, the "Manufacturing Agreement").  This is Ampro's answering brief in opposition to Defendants' Motion.

## SUMMARY OF ARGUMENT

A.     Defendants' Motion is premature.  Courts usually consider fee-shifting motions after a case has been resolved.  There are good reasons to follow that norm in the instant case.  There is overlap between (i) Ampro's claims involving the Manufacturing Agreement – which this Court dismissed, and (ii) Ampro's still-pending claims under the related Development Services Agreement ("Development Agreement") and Statement of Work ("SOW") – which are scheduled for trial this coming spring.  In the interest of efficiency, the Court should defer consideration of Defendants' Motion until after all claims in this case are adjudicated.

B.     In the event that the Court considers and grants Defendants' Motion at this time, any award should be in an amount substantially less than what the Defendants request.  Defendants' purported allocation of fees is unreasonable on its face, in that they seek to recover nearly all of the fees they have incurred to date in this case.

## STATEMENT OF FACTS

Plaintiff, Ampro, is a California corporation that does business as "ADLink." (D.I. 51 at 1 & n.1). Defendants are part of the Honeywell International conglomerate. (*Id.* at 2). Defendant LXE is a Delaware entity, as is defendant Metrologic Instruments, Inc., which does business as Honeywell Scanning & Mobility, or "HSM."

In its original complaint, Ampro alleged that Defendants had breached or interfered with two related contracts: the Development Agreement, and the Manufacturing Agreement. (D.I. 1) Under these related contracts, Ampro agreed to design and manufacture a carrier board and related products for the Defendants' model VX8/9C vehicle-mounted computer (D.I. 51 at 1), as specified in a Statement of Work ("SOW"), which was an integral part of both the Development Agreement and the Manufacturing Agreement. When assembled, these products make a specific type of tablet computer built to Defendants' specifications. To memorialize this agreement, the parties executed various contracts, including the SOW, the Development Agreement, the Manufacturing Agreement, and addenda concerning requirements and pricing. (*Id.* at 1)

The Court dismissed Ampro's original complaint (D.I. 28), after which Ampro filed a First Amended Complaint (D.I. 33), and Defendants filed a "partial motion to dismiss" (D.I. 41). On September 9, 2015, the Court granted the partial motion to dismiss. (D.I. 51, 52).[1]

On October 22, 2015, Ampro filed: (1) a motion for leave to file a proposed second amended complaint (D.I. 59), and (2) a motion for partial relief from the Court's September 9, 2015 Order (D.I. 57). The Court denied these motions on July 1, 2016. (D.I. 114). Ampro moved for reargument on July 15, 2016 (D.I. 121), and the Court denied that motion. (D.I. 157).

---

[1]     Defendants repeatedly state that the dismissal was "with prejudice" (D.I. 164, Op. Br. at 1, 2, 4, 7, 9), but the Court's decision did not include the words "with prejudice."

Ampro's claims for breach of the Development Agreement and the SOW (*e.g.*, D.I. 33 at ¶51) remain pending, and the parties are currently in the process of completing discovery.  In the past two months, counsel have completed four depositions, and five more are scheduled but yet to be taken.  A five-day jury trial is scheduled for May 2018.

## ARGUMENT

### I.     DEFENDANTS' MOTION IS PREMATURE.

As is evident from the attorneys'-fee case law cited in Defendants' opening brief in support of their Motion (cited herein as "Op. Br."), fee motions are typically considered at the end of a case.[2]  For the following reasons, that is what should happen in this case.

---

[2]      *See Branker v. Hotel on The Cay TimeShare Ass'n*, 2009 WL 2244620 (D.V.I. July 24, 2009) (attorneys' fee motion after dismissal of civil action in its entirety); *Comrie v. Enterasys Networks, Inc.*, 2004 WL 936505 (Del. Ch. Apr. 27, 2004) (attorneys' fees after trial and post-trial decision); *Deisler v. MacCormack Aggregates, Co.*, 54 F.3d 1074 (3d Cir. 1995) (attorneys' fee motion after trial and jury verdict on all claims in the case); *Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 676 (D. Del. 2013) (attorneys' fee motion after bench trial and post-trial briefing); *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 715 (5th Cir. 1974) (fee award after trial and final order); *Mahani v. EDIX Media Grp., Inc.*, 935 A. 2d 242, 244 (Del. 2007) (fee award after trial); *Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956 (9th Cir. 1983) (fee award after entry of judgment); *Obin v. District No. 9 of the Int'l Ass'n of Machinists & Aerospace Workers*, 651 F.2d 574, 575 (8th Cir. 1981) (fee motion considered after bench trial, jury trial, and entry of judgment on all claims); *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 455 (3d Cir. 2000) (briefing and decision on costs and fees after trial); *Schwarz v. Folloder*, 767 F.2d 125, 128 (5th Cir. 1985) (filing of motion for attorneys' fees and costs after action was dismissed with prejudice, in its entirety); *White v. New Hampshire Dept. of Employ. Sec.*, 455 U.S. 445 (1982) (post-judgment motion for attorney fees).

3

**A.**     <u>**Consideration of the Motion Should Be Deferred for Reasons of Efficiency.**</u>

There is considerable overlap between Ampro's pending claims for breach of the Development Agreement and SOW and its dismissed claim for breach of the Manufacturing Agreement.  The contracts are inter-related.  They were signed within a period of a few months – the Development Agreement and the SOW on October 15, 2012, and the Manufacturing Agreement and related addenda on or about January 29, 2013 (D.I. 41 A 1).  Defendants terminated the Development Agreement (and the SOW incorporated into it) and the Manufacturing Agreement on the same day – July 10, 2013 (D.I. 164, Op. Br. at 2).  For each side of this dispute, most of the key facts and witnesses regarding the formation, performance, and ultimate termination of the Development Agreement, the Manufacturing Agreement, and the SOW are the same with respect to each of the three documents, and the claims asserted with respect to each.  Indeed, Defendants' purported termination of the Agreements occurred during the development process and before manufacturing, so there are few if any witnesses or facts that are unique to the manufacturing aspect of the VX8/9C.

As Ampro previously informed the Court, soon after the Court's September 9, 2015 opinion (D.I. 51) dismissing Ampro's claim for breach of the Manufacturing Agreement, Ampro discovered new information supporting Ampro's belief that Defendants had terminated Ampro's contracts improperly (*e.g.*, D.I. 57-1 at 1-7; D.I. 57-3 at ¶¶1-3).  In particular, Ampro learned that Honeywell had acquired a new subsidiary, Intermec, and that Intermec had a product called the VM3, containing the components that Ampro was developing for Defendants for the VX8/9C. (*Id.*)

Ampro contends that Defendants' termination of Ampro's contracts was precipitated by Defendants' delay and related changes to the VX8/9C (to the point that its 33 salient

features/specifications are essentially the same as the VM3), as well as their acquisition of Intermec, such that Defendants chose to replace their VX8/9c line of products with the VM3. *See, e.g.*, Defendants' document production nos. LXE0000879 (*see*, D.I. 133, Ex. A, ¶¶104-105), LXE0030780, LXE0028718, LXE0031946 (copies attached hereto as Exhibit 1); Expert Report of Robert Stillerman (D.I. 133, Ex. A). Ampro contends that evidence of these facts, and other similar conduct by Defendants, supports Ampro's claims for breach of the Development Agreement and the SOW – just as Ampro contended that such evidence supported its proposed amended claim for breach of the Manufacturing Agreement (*See, e.g.*, D.I. 152 at 1-2.) Accordingly, most of the work done in this case regarding the rise of the VM3 and the corresponding demise of the VX8/9c is just as important to Ampro's pending claims for breach of the Development Agreement and the SOW as Ampro believed it would be for its dismissed claim for breach of the Manufacturing Agreement. (*Id.*)

Under these circumstances, this Court should exercise its discretion to defer consideration of Defendants' motion for attorneys' fees until the Court has a clearer understanding, through the evidence it will receive at the scheduled May trial, of the nature and validity of Ampro's still-pending claims for breach of the Development Agreement and the related SOW. After hearing and seeing the testimony and other evidence at the trial, the Court will be in a better position to assess the inter-relatedness of the contracts, and the overlap between Ampro's (i) pending claims for breaches of the Development Agreement and SOW, and (ii) dismissed claims related to breach of the Manufacturing Agreement. This enhanced perspective on all of the issues in the case will better enable the Court to assess which attorneys' fees and costs can and should be assessed against which parties.

**B.**      <u>Defendants' Fee Request Is Subject to Offsetting Claims.</u>

Defendants state in their brief that Ampro's claimed damages with respect to its claims remaining in the case at this time are "approximately $226,829 arising under the Development Agreement and [SOW]." (D.I. 164, Op. Br. at 10). As Defendants know, however, the principal amount claimed by Ampro under the Development Agreement is $246,829 (D.I. 33 at 52). As Defendants also know, from the report of Ampro's economic expert Dr. Latham, served almost one year ago (D.I. 128), Ampro's total claim as of August 2016 (including interest) was more than ███████, with interest continuing to accrue thereafter. If Ampro is successful at the scheduled trial, its claim including interest and costs may then exceed ██████. Given the excessiveness of the Defendants' fee request (as explained in Argument section II, *infra*), Ampro's recovery from a favorable verdict at trial may exceed any fee award this Court ultimately grants to the Defendants.

In addition, in the event of a favorable outcome on Ampro's pending claims for breach of the Development Agreement and the SOW, Ampro may have a fee request of its own. Ampro's pending and yet-to-be-resolved claims include claims for Defendants' breaches of Sections 1, 2, and 9(b) of the Development Agreement and Section 7.0 and 9 of the SOW. (D.I. 33, First Amended Complaint, at ¶51). The SOW was Ampro's proposal for "design, manufacturing, and integration services for HONEYWELL's next generation VX8/9C carrier board per the HONEYWELL's ODM Requirements" (D.I. 33, Ex. A, SOW at p. 3, ¶1.0). It sets forth responsibilities of the parties (*e.g.*, D.I. 33, Ex. A, SOW at ¶¶6.0-8.0), including amounts to be paid (*e.g.*, *id.*, at ¶¶9.0-10.0).

Soon after the SOW and the Development Agreement were signed, the parties entered into the Manufacturing Agreement, in which they agreed that the SOW "is subject to and

incorporates by reference the terms of this [Manufacturing] Agreement." (D.I. 33, Ex. A; and D.I. 165-1, at ¶1(h)). [3]  The Manufacturing Agreement was expressly governed by Delaware law (*id.*, ¶32) and thus the SOW was made subject to Delaware law as well.  The Manufacturing Agreement also contains the fee-shifting provision (*id.*, ¶33) on which the Defendants rely as the basis for their Motion.

Delaware law allows an instrument to incorporate a separate document by reference. *See*, *e.g.*, *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *12 (Del. Ch. Dec. 7, 2012) ("Delaware law holds that where a contract incorporates another contract by reference, the two contracts will be read together as a single contract."); *State ex rel. Hirst v. Black*, 46 Del. 295, 299, 83 A.2d 678, 681 (Del. Super. Ct. 1951) ("It is, of course, axiomatic that a contract may incorporate by reference provisions contained in some other instrument.").  Further, courts in the Third Circuit have held that fee-shifting provisions can be incorporated by reference from one agreement into another. [4]  In this case, the parties incorporated the terms of the Manufacturing Agreement – including the attorneys' fee provision of Section 33 – into the SOW.  Further, the SOW, sometimes referred to as the "Milestone "Schedule" (*e.g.*, D.I. 33 at ¶35), is incorporated by reference into the Development Agreement, at Section 1(a) (*e.g.*, D.I. 33, Ex. C, §1(a)).

Given Ampro's potentially offsetting claims, it would promote judicial efficiency, economy, and common sense for this Court to defer consideration of the Defendants' Motion

---

[3]   The full text of Section 1(h) of the Manufacturing Agreement reads as follows: "'Statement of Work' or 'SOW' means a document, which outlines the obligations of the parties with respect to particular products or related services, including without limitation, the tasks, responsibilities, schedule, deliverables, and associated costs thereof and ***which is subject to and incorporates by reference the terms of this Agreement.***"  (Emphasis added).
[4]   *See Days Inns Worldwide, Inc. v. DB Vancouver, LLC*, 2015 WL 3938883, at *6 (D.N.J. June 25, 2015); *see also Travelodge Hotels, Inc. v. BO-ED Inc.*, 2007 WL 8053668, at *14 (D.N.J. Mar. 19, 2007).

until the end of the case, when more will be known about the outcomes and effects of the potentially offsetting claims.

**C.      Defendants' Motion Should be Deferred to Avoid Piecemeal Litigation.**

Defendants argue that the Court should consider their Motion now, so that it can become part of the eventual final judgment in this action and thus "avoid piecemeal appellate litigation." (D.I. 164, Op. Br. at 8).   But this argument is a red herring; Ampro is not advocating for piecemeal litigation, and none would be caused if the Court defers consideration of the Motion. To the contrary, deferring consideration of Defendants' Motion until after all claims are decided would promote, rather than inhibit, Defendants' stated goal of avoiding piecemeal litigation.

In a similar situation, one district court held as follows in deciding to defer consideration of a fee-shifting motion until after trial:

> At this time, a jury trial is currently scheduled for October 21, 2008, on Plaintiff's fifth claim for relief. Because this action has yet to be resolved in its entirety, the court finds it is premature to determine whether Defendants are entitled to fees and costs. Similarly, to the extent Plaintiffs may be entitled to fees and costs, those fees and costs may be offset by any favorable award to Defendants. Such issues should be decided upon the final resolution of the substantive issues in this case.

*Doe v. Nevada*, 2008 WL 2512834, at *1 (D. Nev. June 19, 2008).

More recently, in a 2015 decision, a California district court held:

> [The] request [for attorneys' fees] is premature. There are various matters that remain at issue in this action. The nature, scope and reasonableness of fees associated with his claim for the payment of the 12-month severance cannot be determined in isolation. Rather, these issues overlap with the other claims advanced by each side in this action, and their potential competing requests for attorney's fees. Whether fees should be awarded to any party, and if so their amount, as well as potential offsets due to competing fee requests, are matters that can only be addressed at the conclusion of this entire matter. Accordingly, this portion of the present motion is DENIED, without prejudice to renewing this request at the conclusion of the action.

*Rutherford v. Palo Verde Health Care Dist.*, 2015 WL 12864244, at *29 (C.D. Cal. Mar. 13, 2015).

Similarly, in *Cleverley v. Ballantyne*, 2014 WL 317775, at *4 (D. Nev. Jan. 28, 2014), a district court held:

> As Plaintiff's note, Order (# 137) is interlocutory and is at least theoretically subject to withdrawal or modification by the Court prior to the entry of final judgment. The mere legal possibility that the order might be withdrawn or modified, however, does not persuade the Court that Defendant's motion for attorney's fees should be denied as premature. Plaintiff, however, still has claims against Defendant Allsite for breach of contract and a claim against all Defendants for fraud in the inducement, as well as a claim for defamation against Defendant Ballantyne. Should the Plaintiff prevail on his breach of contract claim, he will potentially be entitled to an award of attorney's fees against Defendant Allsite under Section 9 of the Purchase and Sale Agreement. He could potentially also recover costs on his other claims. Thus, there could be an offset of the fees and costs that may be awarded to the Defendants with respect to the dismissed claims. The Court exercises its discretion in this matter to await a resolution of all of the parties' claims, whether by judgment and/or settlement, before deciding the appropriate amount of attorney's fees and costs that should be awarded to Defendants with respect to the claims dismissed by Order (# 137).

As was done in the above-cited decisions, this Court should defer consideration of Defendants' Motion at this time.[5]

---

[5]     In their Opening Brief, the Defendants make the following assertion in a footnote:

> Because the Court determined that "Ampro has adequately pled that [Metrologic] is a party to the [Manufacturing Agreement]" (D.I. 51 at 12), Metrologic has all associated rights under that agreement, including the right to recover reasonable attorneys' fees and costs pursuant to Section 33 of that Agreement.

(D.I. 164, Op. Br. at 5 n.3). In their Answer, Defendants' denied Ampro's allegation that HSM was a party to the Development Agreement, the Manufacturing Agreement, and the other related agreements with Ampro. (*See* D.I. 56, Answer at ¶19). But Defendants cannot have it both ways – denying that HSM (a/k/a Metrologic) was a party to the agreements with Ampro, while at the same time arguing that HSM can recover fees under a provision in one of them – *i.e.*, Section 33 of the Manufacturing Agreement.   If HSM cannot recover attorneys' fees under the Manufacturing Agreement, then the fees and costs claimed in the Motion would have to be properly allocated as between the Defendants.  This is yet another reason for the Court to defer (or deny) the Defendants' Motion.

**D.      It Is Possible This Court Will Hold Ampro Is the Prevailing Party.**

Ampro acknowledges that this Court dismissed its claims for breach of the Manufacturing Agreement.  But according to case law on which Defendants rely, that fact does not necessarily preclude a determination by the Court that Ampro is the "prevailing party" in this action.  In *McKenna v. Ferraira*, *supra* (cited in D.I. 164, Op. Br. at 6), a case involving multiple claims against multiple defendants, a district court was called on to decide who was a "prevailing party" for the purpose of awarding court costs.   The court held in *McKenna* that, where a plaintiff prevailed on one, but not all, of his claims against a defendant, the plaintiff was a prevailing party.  *Id.*, 1996 WL 711019, at *2 (citing *Devex Corp. v. Gen. Motors Corp.*, 494 F. Supp. 1369, 1380 (D. Del. 1980), *aff'd*, 667 F.2d 347 (3d Cir. 1981), *aff'd*, 461 U.S. 648, (1983) ("A prevailing party is the party which, although it might not sustain all of its claims, receives a favorable judgment"); *Seber v. Daniels Transfer Co.,* 618 F. Supp 1311, 1316 (W.D. Pa. 1985) ("plaintiff need not succeed on every count to be considered the prevailing party in this case")).  The court's holding was based on its approval of the proposition that a "plaintiff is considered the prevailing party . . . where a favorable judgment is entered for plaintiff on any of the claims asserted, even if plaintiff is only successful on a fraction of the claims asserted and even if plaintiff obtains only a fraction of the relief sought."  *Id.*  Under this definition, Ampro may still be the prevailing party in this action, a possibility that provides another reason for the Court to refrain from considering the Motion for now.

## II. DEFENDANTS' FEE REQUEST IS EXCESSIVE.

Defendants request that this Court award them $601,942.29 under the attorneys' fee provision in the Manufacturing Agreement.  As the movants, Defendants bear the burden of establishing the reasonableness of their request.  *See, e.g., Asahi Glass Co., Ltd. v. Guardian Industries Corp.*, 2013 WL 936451, at *1 (D. Del. Mar. 11, 2002).

10

In support of their request, Defendants filed an affidavit of their counsel (D.I. 165), with exhibits (D.I. 165-1 and D.I. 166).  Exhibit 2 (D.I. 166) to the affidavit includes a chart titled "Summary of Fees and Costs," and copies of invoices of Defendants' counsel.[6]  Analysis of these documents reveals that Defendants' fee request is excessive.

In their brief, Defendants state that they have allocated their fees and expenses into three categories, as follows:

> Attorneys' fees and costs that relate solely to the Manufacturing Agreement are highlighted in pink, whereas fees and costs relating solely to the Development Agreement are highlighted in yellow. See Rostocki Aff., Ex. 2.  Consistent with Defendants' conservative allocation and apportionment, Defendants have also excluded entirely (and, therefore, highlighted yellow) all entries relating to Defendants' applications to strike the expert report of Robert Stillerman and for a protective order limiting certain discovery.  (D.I. 142, 149.)  Finally, the entries that relate to both claims are not highlighted. See Rostocki Aff., Ex. 2.

(D.I. 164, Op. Br at 10, n.6).  Defendants' brief describes how they purportedly used these three categories "to fairly allocate" (*id.* at 10) their fees and costs for the purpose of their Motion.  It appears that their starting point was to exclude from their application certain fees and expenses – identified in Exhibit 2 by yellow highlighting – that they decided pertain only to claims under the Development Agreement. (*Id.*)  These excluded fees appear to total $62,869.50.  Defendants state in their brief that all other fees in the other two categories are included in their fee application.  Their explanation for this allegedly "fair" allocation explanation is this:

> [A]ll fees and costs that relate solely to Ampro's Manufacturing Agreement claims have been included in full.  All remaining fees and expenses that do not relate solely to one agreement or the other were allocated to the Manufacturing Agreement claims because, without those claims, this lawsuit likely never would have been brought.

---

[6]      Defendants do not explain why their billing statements included in Exhibit 2 are not dated contemporaneously with the services rendered.  For example, the second invoice in Exhibit 2 (D.I. 166) is dated 3/3/2016, but covers time entries from 01/12/14 to 02/25/15; and the third through eighth invoices in Exhibit 2 are all dated 5/6/2015, although they cover time entries from 10/02/15 to 03/28/16.

11

(D.I. 164, Op. Br. at 10).

Defendants' so-called fair allocation is obviously self-serving; it also over-reaches. They start by claiming a right to recover <u>all</u> of their fees from November 11, 2013 to August 23, 2016, regardless of whether the work pertained to claims or counterclaims under the Development Agreement, claims under the Manufacturing Agreement, or both, or neither. (*See* D.I. 166, Ex. 2.) In making this "conservative allocation," Defendants seek to recover <u>all</u> of their fees for <u>all</u> of their work over a 33-month period, including case assessment, legal research, contract analysis, case scheduling issues, motions to dismiss, a Rule 11 motion, discovery requests and responses, and electronic discovery. (*See id.*)

As noted above, Defendants' argument in favor of this purportedly "conservative allocation" is that, "without [the Manufacturing Agreement] claims, this lawsuit never would have been brought." (D.I. 164, Op. Br at 10). Not only is this hypothesis a speculation without support, but it is belied by the current state of the case: The Court has dismissed Ampro's claims regarding the Manufacturing Agreement, but the remaining claims that Defendants assert "never would have been brought" are going to trial.

Moreover, for the period from August 24, 2016 to the present, it appears that more than half of the time entries are either highlighted in purple or unhighlighted, meaning that Defendants have allocated <u>all</u> fees for <u>all</u> such entries to their proposed fee recovery under the Motion. There are approximately 140 "unhighlighted" time entries of Defendants' attorneys for such period, and they cover work on electronic discovery, case scheduling modifications, deposition scheduling, discovery disputes, and privilege logs (*see id.*) – all of which necessarily pertained to Ampro's claims and Defendants' counterclaims that were and still are being prepared for trial, rather than to Ampro's claims that the Court dismissed. Thus, Defendants

have not "allocated" such fees fairly; to the contrary, they simply assigned <u>all</u> of such fees to the category for which they seek a full recovery.

Apparently believing that there is more than one way to try to achieve the allocation they desire, Defendants take a slightly different approach in the chart titled "Summary of Fees and Costs," filed as the first page of Exhibit 2 to their counsel's affidavit. Although not explained this way in their brief, it appears from their Summary chart that Defendants seek to allocate 98% of the "unallocated" fees and expenses (*i.e.*, those entries that are not color-highlighted in the invoices included in Exhibit 2) to the category that they seek to recover under their Motion. As shown in the "Summary of Fees and Costs," these "unallocated" fees comprise almost $400,000 of the Defendants' approximately $600,000 fee request. (D.I. 166, Ex. 2).

Presumably, Defendants seek to justify a recovery of 98% of these "unallocated" (and unhighlighted) charges on the ground that they "defeated 98% of [Ampro's] damages" (D.I. 164 at 1, 4; *see also id.* at 3, 10).[7] Defendants' 98% allocation argument is contradictory, however, to their position that that the starting point for a fee request should be the professional time worked on the case (*see* Op. Br. at 9-12).

In any event, as is illustrated in the following summary, Defendants' proposed "conservative allocation" would yield them a fee award of $601,942,29, out of total billings of $675,451.19, based on the information contained in Exhibit 2 to the affidavit of Defendants' counsel:

---

[7]     The $13 million damage figure used in Defendants' 98% calculation was an estimate, based on Ampro's projected gross sales over a three-year period (e.g., D.I. 33, at ¶¶41-42, 52), which Defendants denied (e.g., D.I. 56, Answer at ¶¶41-42, 52). As an estimate pertaining to a dismissed claim, it was not the subject of any discovery, expert report, or other proof, nor was it an amount to which Defendants ever agreed. Thus, Defendants cannot fairly claim to have "defeated … 98% of [Ampro's] damages" (D.I. 164, Op. Br. at 1).

|  | [Amt. billed] | [Amt. claimed] |
|---|---|---|
| Manufacturing Agreement Only Entries [yellow]: | $195,933.50 | 195,933.50 |
| Development Agreement Only Entries [purple] | 62,869.50 | 0.00 |
| Blended Entries – Unhighlighted | 392,483.40 | 384,633.73 |
| Total Fees: | 657,286.40 | 580,567.23 |
| Total Costs: | 24,164.79 | 21,375.06 |
| Grand Total (Fees & Costs): | $675,451.19 | $601,942.29 |

(D.I. 166, Ex. 2).

Such an award would result in Defendants' imposing on Ampro almost 90% of the total fees and costs that Defendants have incurred so far in this case. None of Defendants' arguments can support such a lopsided allocation as reasonable.

Other reasons why Defendants' fee request is excessive are their inclusion of over 50 time entries, amounting to approximately $100,000 of fees, for their unsuccessful Rule 11 motion (*see* time entries from 11/05/15 to 08/29/16 in D.I. 166, Ex. 2, containing the words "Rule 11," "R. 11" or "sanctions");[8] and their inclusion of fees for time spent on counsel's preparation of fee proposals to Defendants (*id.*, time entries for 11/27, 11/29, 12/2, 12/3, and 12/4/13) and case budgets (9/19/14 for $810).

With Ampro's claims under the Development Agreement and the SOW still pending and scheduled for a trial that is only months away, the Court should wait until after it hears the evidence and can better assess the overlap between the two sets of claims before going "into the weeds" on Defendants' itemized fees and costs and attempting to allocate them to one set of claims or another.

---

[8]     Ampro acknowledges that some of the attorney time entries containing the words "Rule 11," "R. 11," or "sanctions" (particularly those entries pertaining to the April 2016 oral argument regarding several motions) also contain references to other tasks performed. However, a substantial majority of the time entries containing the above-quoted words cover only services pertaining to Rule 11 and/or sanctions. Moreover, it is apparent from a review of Defendants' invoices in Exhibit 2 that a significant number of the other entries in the time period from 11/05/16 to 08/29/16 (including many of the time entries pertaining to the April 2016 oral argument) involved work on Rule 11 or sanctions issues despite their not expressly referring to "Rule 11" or "sanctions."

14

## CONCLUSION

For the reasons set forth herein, this Court should exercise its discretion to defer consideration of Defendants' Motion at this time. Alternatively, if the Court elects to consider the Motion now, it should deny recovery, or substantially reduce any recovery from the amount requested, due to Defendants' failure to establish reasonableness.

Respectfully submitted,

OF COUNSEL:

/s/ Henry E. Gallagher, Jr.

WITTEN LAW, LTD.
Jason B. Witten (admitted *pro hac vice*)
Blackwell House, Guildhall Yard
London, EC2V 5AE
UK
UK: 44-203-287-9500
US: (949)485-5055
j.witten@wittenltd.com

Thomas M. Dunlap (admitted *pro hac vice*)
DUNLAP WEAVER, PLLC
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20005
(202) 316-8558
(202) 318-0242 facsimile
tdunlap@dunlapweaver.com

Henry E. Gallagher, Jr. (#495)
Ryan P. Newell (#4744)
Michael R. Grandy (#6036)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302) 757-7300
hgallagher@connollygallagher.com
rnewell@connollygallagher.com
mgrandy@connollygallagher.com

*Attorneys for Plaintiff,*
*Ampro Computers, Inc.*

Date: August 14, 2017

REDATED PUBLIC VERSION FILED: August 21, 2017

15