IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMPRO COMPUTERS, INC., a California corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>LXE, LLC, a Delaware limited liability company, METROLOGIC INSTRUMENTS, INC. d/b/a HONEYWELL SCANNING AND MOBILITY, a New Jersey corporation, and DOES 1-10, inclusive,<br><br>        Defendants. | C.A. No. 1:13-cv-01937-LPS |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR RECOVERY OF ATTORNEYS' FEES AND COSTS INCURRED IN CONNECTION WITH PREVAILING AGAINST PLAINTIFF'S CLAIMS ARISING FROM THE <u>INTERNATIONAL MANUFACTURING AGREEMENT</u>**

Dated: September 11, 2017

OF COUNSEL

REED SMITH LLP
John F. Hagan, Jr.
10 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
jhagan@reedsmith.com

REED SMITH LLP
John C. Scalzo
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
jscalzo@reedsmith.com

REED SMITH LLP
Brian M. Rostocki (No. 4599)
Benjamin P. Chapple (No. 5871)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7561
Facsimile: (302) 778-7575
brostocki@reedsmith.com
bchapple@reedsmith.com

*Counsel for Defendants LXE, LLC and Metrologic Instruments, Inc.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..........................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.    DEFENDANTS ARE CONTRACTUALLY ENTITLED TO RECOVER THEIR REASONABLE ATTORNEYS' FEES AND COSTS ......................................................2

II.   DEFENDANTS' MOTION IS TIMELY ..........................................................................2

      A.    The Alleged Interrelatedness Of The Manufacturing Agreement And Development Agreement Does Not Preclude An Award Of Fees And Costs .........3

      B.    Ampro Is Not Excused From Paying Defendants' Fees And Cost Now Because Ampro May Recover Substantially Less In Damages Later .....................4

      C.    Entertaining Defendants' Motion Will Not Result In Piecemeal Litigation............7

      D.    Ampro Cannot Be A "Prevailing Party" For Fee-Shifting Purposes .......................7

III.  DEFENDANTS' FEES AND COSTS ARE REASONABLE ............................................8

CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**   Page(s)

*Buckhannon Bd. v. W. Va. D.H.H.R.*,
   532 U.S. 598 (2001) ...................................................................................................... 3

*Cleverley v. Ballantyne*,
   2014 WL 317775 (D. Nev. Jan. 28, 2014) ................................................................. 3, 7

*Days Inns Worldwide, Inc. v. DB Vancouver, LLC*,
   2015 WL 393883 (D.N.J. June 25, 2015) ...................................................................... 5

*Deere & Co. v. Exelon Generation Acquisitions, LLC*,
   2016 WL 6879525 (Del. Super. Ct. Nov. 22, 2016) ...................................................... 6

*Deisler v. McCormack Aggregates, Co.*,
   54 F.3d 1074 (3d Cir. 1995) ........................................................................................... 9

*Doe v. Nevada*,
   2008 WL 2512834 (D. Nev. June 19, 2008) .................................................................. 7

*Emerald Partners v. Berlin*,
   2003 WL 21003437 (Del. Ch. Apr. 28, 2003) ............................................................... 2

*Frank Invs. Ranson, LLC v. Ranson Gateway, LLC*,
   C.A. No. 11101-VCS (Del. Ch. Apr. 17, 2017) ............................................................. 6

*Greenstar v. Heller*, 934 F. Supp. 2d 672 (D. Del. 2013) ..................................................... 8

*Kurz v. Holbrook*,
   2010 WL 3028003 (Del. Ch. Feb. 4, 2010) .................................................................... 3

*Hensley v. Eckerhart.*,
   461 U.S. 424 (1983) ....................................................................................................... 8

*Lodhi v. Officer Sepehri*,
   2016 WL 6892104 (E.D. Va. Mar. 15, 2016) ................................................................ 3

*McLean v. United States*,
   566 F.3d 391 (4th Cir. 2009) .......................................................................................... 3

*Napier v. Thirty or More Unidentified Federal Agents*,
   855 F.2d 1080 (3d Cir. 1988) ......................................................................................... 7

*Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Justice Ctr.*,
   492 F. 3d 1158 (10th Cir. 2007) ..................................................................................... 3

*Rutherford v. Palo Verde Health Case District*,
   2015 WL 12864224 (C.D. Cal. Mar. 13, 2015) ........................................................................7

*Travelodge Hotels, Inc. v. BO-ED Inc.*,
   2007 WL 8053668 (D.N.J. Mar. 19, 2007) ............................................................................5

*W. Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*,
   2009 WL 458779 (Del. Ch. Feb. 23, 2009) ...........................................................................9

*White v. N.H. Dep't of Emp't Sec.*,
   455 U.S. 445 (1982) ...............................................................................................................7

*World-Win Mktg., Inc. v. Ganley Mgmt., Co.*,
   2009 WL 2534874 (Del. Ch. Aug. 18, 2009) .........................................................................8

**Other Authorities**

D. Del. L. Civ. R. 54.3 .................................................................................................................3, 7

## INTRODUCTION

Ampro's opposition is notable more for what it does not dispute than for what it does. Ampro does not contest Defendants are contractually entitled to recover their reasonable attorneys' fees and costs in defeating Ampro's claims arising from the Manufacturing Agreement. Nor does Ampro argue the hourly rates charged by Defendants' counsel or the fees and costs requested in their motion ($601,942.29) are out of line with what attorneys of similar experience and qualifications would be entitled to after successfully defeating over $12 million in claims on four separate occasions.

Ampro instead raises two arguments, neither of which relates to the threshold (and now undisputed) issue of Defendants' entitlement to recover certain fees and costs: (1) the Court should defer ruling on Defendants' motion until a final judgment is entered on Ampro's last remaining claim for breach of the Development Agreement (which does not contain a "loser pays" provision) because any recovery by Ampro under that Agreement in the future will offset at least some of the fees and costs to which Defendants are entitled now; and (2) the amount of fees and costs sought by Defendants is unreasonable. Ampro is wrong on both counts.

Under Rule 54 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and cases interpreting it, including the *Cleverley* case cited by Ampro, Defendants are not required to wait until after judgment on all claims to submit a request for their attorneys' fees and costs on those claims for which they are already prevailing parties under the Manufacturing Agreement. In fact, courts routinely award attorneys' fees and costs pursuant to contractual fee-shifting provisions before trial on remaining claims, which, just like Ampro's final claim here, are not subject to fee-shifting.

There is *zero* chance that Ampro could ever recover more than the amount requested by Defendants. Ampro's best case damages on its last claim for breach of the Development

Agreement is, by its expert's own admission, $246,829 plus interest. Defendants' prevailing party attorneys' fees and costs under the Manufacturing Agreement is more than twice that amount. Moreover, Ampro will never have a fee request of its own because there is no fee-shifting provision in the Development Agreement, and the Manufacturing Agreement expressly limits fee-shifting to disputes "arising from [the Manufacturing Agreement]."

Finally, Ampro does not cite any legal authority that suggests the allocation used by Defendants is inappropriate. In fact, the authority cited by Defendants (which Ampro cannot rebut) makes clear that Defendants are entitled to recover attorneys' fees and costs even on unsuccessful motions and for legal work divided between Ampro's Development Agreement claim and its Manufacturing Agreement claims because Defendants have "predominated in the litigation" in dismissing with prejudice 75% of Ampro's claims and 98% of its alleged damages.

## ARGUMENT

### I. DEFENDANTS ARE CONTRACTUALLY ENTITLED TO RECOVER THEIR REASONABLE ATTORNEYS' FEES AND COSTS

Ampro refused to stipulate to the issue of entitlement in order to narrow the issues for the Court's consideration to the reasonableness of the attorneys' fees and costs sought. (Ex. 4.) Yet, Ampro does not dispute Defendants are entitled under Section 33 of the Manufacturing Agreement to their reasonable attorneys' fees and costs incurred in defeating Ampro's claims arising from that Agreement. Accordingly, Ampro has waived any challenge on the issue of entitlement. *See Emerald Partners v. Berlin*, 2003 WL 21003437, at *43 (Del. Ch. Apr. 28, 2003).

### II. DEFENDANTS' MOTION IS TIMELY

Ampro cites cases in which a court elected to consider a fee motion at the end of a case, but it cites no authority stating that a party must wait until after entry of final judgment on all claims before it can seek fees and costs for claims on which it has prevailed on the merits. That

is because there is no such authority. In fact, the language of D. Del. L. Civ. R. 54.3 makes clear that Defendants have the option of making their motion now on Ampro's Manufacturing Agreement claims or waiting until the entry of final judgment on all claims. *Id.* ("Judgment on Less than all Claims. Where a judgment is not a final judgment on all claims, failure to apply for attorneys' fees shall not prevent a party from applying for fees after entry of final judgment."); *see also Kurz v. Holbrook*, 2010 WL 3028003, at *1-4 (Del. Ch. Feb. 4, 2010) (collecting authorities relating to interim fee awards); *Cleverley v. Ballantyne*, 2014 WL 317775, at *3 (D. Nev. Jan. 28, 2014); *Buckhannon Bd. v. W. Va. D.H.H.R.*, 532 U.S. 598, 121 (2001).

Further, contrary to the suggestion made by Ampro in a footnote, the Court's dismissal of Ampro's Manufacturing Agreement claims under Rule 12(b)(6) "is presumed to be both a judgment on the merits and to be rendered with prejudice." *See McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009); *see also Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cty. Justice Ctr.*, 492 F. 3d 1158, 1162 (10th Cir. 2007); *Lodhi v. Officer Sepehri*, 2016 WL 6892104, at *3 n.5 (E.D. Va. Mar. 15, 2016). This presumption is well founded here, where the Court has repeatedly denied Ampro's requests for leave to replead its claim for breach of the Manufacturing Agreement. (D.I. 51, 121, 157.) As such, Defendants are entitled to their fees and costs for successfully defeating those claims.

### A. The Alleged Interrelatedness Of The Manufacturing Agreement And Development Agreement Does Not Preclude An Award Of Fees And Costs

Ampro argues it would be "inefficient" for the Court to rule on Defendants' motion relating to the Manufacturing Agreement until the Court has a "clearer understanding … of the nature and validity of Ampro's still-pending claims for breach of the Development Agreement" because those Agreements are "inter-related." (Pl.'s Opp'n at 5.) This argument is a red herring. Even if the Agreements are inter-related and Ampro intends to rely on some of the same

evidence for its Development Agreement claim that it would have relied on for its dismissed Manufacturing Agreement claims, only one of the Agreements contains a "loser pays" provision: the Manufacturing Agreement. Because Defendants have prevailed on all of Ampro's Manufacturing Agreement claims, Defendants are entitled to their fees and costs.

Similarly erroneous is Ampro's argument that, "[a]fter hearing and seeing the testimony and other evidence at trial," the Court will be in a better position "to assess which attorneys' fees and costs can and should be assessed against which parties." (Pl.'s Opp'n at 5.) Ampro's case has been narrowed down to a single claim for breach of the Development Agreement. But that Agreement does not contain a "loser pays" provision. As such, there is nothing that could happen at the trial of Ampro's Development Agreement claim—assuming it survives summary judgment—that could result in the Court assessing prevailing party fees and costs against Defendants. Only Defendants are contractually entitled to recover fees and costs in this case.

Finally, it would actually be less efficient for the Court to delay the determination of the amount of fees and costs to which Defendants are entitled until after the May 2018 trial date. As more time passes, memories will fade, the risk of turnover increases, and it will become more onerous for Defendants to respond to each challenge made by Ampro to a specific billing entry. By determining the reasonableness of the fees and costs sought now while the work is still fresh in their memories, Defendants' counsel will be in a better position to address questions the Court may have about a particular entry or set of entries in their invoices.

**B.      Ampro Is Not Excused From Paying Defendants' Fees And Cost Now Because Ampro May Recover Substantially Less In Damages Later**

Ampro argues Defendants should be deprived of prevailing party attorneys' fees they are entitled to now under the Manufacturing Agreement because Ampro may recover in the future damages and prevailing party attorneys' fees in an even greater amount on its Development

- 4 -

Agreement claims. (Pl.'s Opp'n at 5.) This argument is meritless. First, according Ampro's own purported damages expert, William Latham, Ampro's absolute "best case" damages award under the Development Agreement is $246,829 plus interest. (Ex. 5.) Defendants' prevailing party attorneys' fees and costs under the Manufacturing Agreement already double that amount and are still rising because they do not include the full cost of this fee motion. (Pl.'s Opp'n at 2, n.1.) Second, contrary to its opposition, Ampro "may [not] have a fee request of its own." (*Id.* at 6.) Ampro has only one claim remaining in this case: A claim for wrongful termination of the Development Agreement. Unlike the Manufacturing Agreement, however, the Development Agreement does not contain a "loser pay" provision.

Unable to point to a fee-shifting provision in the Development Agreement, Ampro attempts to manufacture one by arguing the terms of the Manufacturing Agreement are incorporated by reference into the Statement of Work, which, in turn, is incorporated into the Development Agreement.[1] (*Id.* at 7.) As with Ampro's other arguments, this one, too, fails. The Development Agreement and Statement of Work do not, like the guarantees in *Days Inns Worldwide, Inc. v. DB Vancouver, LLC*, 2015 WL 393883 (D.N.J. June 25, 2015) and *Travelodge Hotels, Inc. v. BO-ED Inc.*, 2007 WL 8053668 (D.N.J. Mar. 19, 2007),[2] specifically incorporate by reference the prevailing party fee provision from a related agreement.[3] It is well-established under Delaware law that, absent a specific incorporation by reference, a party cannot

---

[1] Ampro says that it has claims (plural) for breach of both the Development Agreement *and* the Statement of Work, but in reality, the Amended Complaint alleges only *one* claim for breach of the Development Agreement (D.I. 33 ¶ 51), which does not incorporate the Manufacturing Agreement's terms.
[2] Both *Days Inns* and *Travelodge Hotels* also involve franchise agreements and personal guarantees, which are governed by New Jersey law, and, therefore, neither case is applicable to the Agreements, which are governed by Delaware law. (Ex. 1 § 32; Ex. 6 § 13.)
[3] To the contrary, Section 37 of the Manufacturing Agreement states that "[i]n the event of a discrepancy between [the Manufacturing Agreement] and the [Development Agreement], the [Development Agreement] will control development issues ...." (Ex. 6 § 37.) The only remaining issue in this case is whether Ampro's failure to timely develop satisfactory carrier board prototypes for the VX8/9C was Ampro's fault (as Defendants contend) or Defendants' fault (as Ampro contends). This issue is exclusively controlled by the Development Agreement and the Statement of Work, neither of which contain a fee-shifting provision.

"borrow" a fee-shifting provision in one agreement to apply to claims arising solely from another agreement that does not contain a fee-shifting provision. *See Deere & Co. v. Exelon Generation Acquisitions, LLC*, 2016 WL 6879525, at *1 (Del. Super. Ct. Nov. 22, 2016) (fee-shifting provisions must "be a clear and unequivocal").

The recent Delaware Court of Chancery decision in *Frank Investments Ranson, LLC v. Ranson Gateway, LLC*, C.A. No. 11101-VCS (Del. Ch. Apr. 17, 2017) (TRANSCRIPT) is on point. In that case, the movant (just like Ampro) was not entitled to recover fees and expenses relating to its claims under a development agreement that did not contain a fee-shifting provision, even though the development agreement was interrelated to a lot purchase agreement that did contain a fee-shifting provision. *Id.* at 123-24. As Vice Chancellor Slights explained:

> You don't have fee shifting in this [Manufacturing] agreement. Fee shifting exists in some of the other agreements [*i.e.*, a Development Agreement] but not here. So regardless of what happens … by the time all of your time is spent and the money is spent on fees, this is a case that seems to me where the litigation [fees and costs] come close to consuming the controversy.

*Id.* That is the scenario Ampro faces, where its best case recovery is hundreds of thousands less than its cost of litigating, which now also includes compensating Defendants for their reasonable attorneys' fees and costs as the prevailing party on Ampro's Manufacturing Agreement claims.

More fundamentally, even if the Statement of Work and Development Agreement did specifically incorporate the "loser pay" provision in the Manufacturing Agreement, there would still be no basis for attorney fee-shifting in the event Ampro prevails on its claim for breach of the Development Agreement. Section 33 of the Manufacturing Agreement provides, "[i]n the event of a dispute arising from ***this Agreement***, the prevailing party shall recovery from the other party the prevailing party's reasonable attorneys' fees and costs." (Ex. 1 ¶ 33 (emphasis added).) "Agreement" is defined as the Manufacturing Agreement between Ampro and LXE. (*Id.* at 1.)

Accordingly, incorporation of Section 33 of the Manufacturing Agreement into the Development Agreement and Statement of Work would still limit fee-shifting to disputes "arising from [the Manufacturing Agreement]." (*Id.* ¶ 33.)

### C. Entertaining Defendants' Motion Will Not Result In Piecemeal Litigation

Granting Defendants' motion will not result in piecemeal litigation because appeals from fee awards are considered together with any appeal on the merits. *See White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 454 (1982); *Napier v. Thirty or More Unidentified Fed. Agents*, 855 F.2d 1080, 1090 (3d Cir. 1988). Nor is there any Delaware authority to support Ampro's contention that the Court must defer consideration of Defendants' motion until after trial. In fact, the rule in this district is just the opposite. *See supra* at 3 (citing D. Del. L. Civ. R. 54.3).

All three of the non-Delaware cases that Ampro cites are also off-target because each one involves cross-motions for fees. *See Doe v. Nevada*, 2008 WL 2512834, at *1 (D. Nev. June 19, 2008); *Cleverley*, 2014 WL 317775, at *4; *Rutherford v. Palo Verde Health Case District*, 2015 WL 12864224, at *29 (C.D. Cal. Mar. 13, 2015). Here, however, Ampro does not now, and will not in the future, have a claim for fees in this case. *See supra* at 5-7. Further undermining Ampro's argument, the *Cleverley* case actually underscores that Fed. R. Civ. P. 54(b), just like D. Del. L. Civ. R. 54.3, "does not mandate that a [prevailing] party," such as Defendants, "wait until after judgment to submit a request for attorneys' fees." *See* 2014 WL 317775, at *3.

### D. Ampro Cannot Be A "Prevailing Party" For Fee-Shifting Purposes

Ampro's opposition is based on the false premise that it can be a "prevailing party" in this case for fee-shifting purposes. (Pl.'s Opp'n at 10.) It cannot. Once again, the Manufacturing Agreement is the only contract with a "prevailing party" provision, and Defendants have prevailed on every single one of Ampro's claims arising out of that Agreement. It is well-established that, "[a]bsent any qualifying language that fees are to be awarded claim-

- 7 -

by-claim or on some other partial basis, a contractual provision entitling the prevailing party to fees will usually be applied in an all-or-nothing manner." *See Greenstar v. Heller*, 934 F. Supp. 2d 672 at 697 (D. Del. 2013) (internal quotations omitted). Accordingly, Ampro cannot be a "prevailing party" under the Manufacturing Agreement.

Nor can Ampro "predominate in the litigation" as a whole. Ampro asserted four claims in this case, one claim for $246,829 for breach of the Development Agreement, and three claims for $12.7 million for breach and interference with the Manufacturing Agreement. But Defendants have successfully defeated three out of four of Ampro's claims and more than 98% of its alleged damages. Under any objective measure, Defendants have already "predominate[d] in the litigation" as a whole. *See World-Win Mktg., Inc. v. Ganley Mgmt., Co*., 2009 WL 2534874, at *3 (Del. Ch. Aug. 18, 2009).

### III. DEFENDANTS' FEES AND COSTS ARE REASONABLE

Ampro does not argue the "loadstar" formula is an inappropriate method for calculating reasonable fees in this case or that Defendants' request for $601,942.29 in attorneys' fees and costs is unreasonable using that formula. Nor does Ampro argue, as it must to successfully oppose Defendants' motion, that the hours billed by Defendants' counsel in repeatedly defeating Ampro's Manufacturing Agreement claims were "excessive, redundant, or otherwise unnecessary." *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Ampro's challenge to the reasonableness of Defendants' fees boils down to two arguments: (1) Defendants are not entitled to recover fees and costs on their Rule 11 sanctions motion because they lost that motion; and (2) Ampro should not be required to pay 100% (or even 98%) of Defendants' fees and cost for work that is also attributable to Ampro's Development Agreement claim simply because the amount of damages Ampro alleged in connection with its Manufacturing Agreement claims represented more than 98% of the total

- 8 -

damages sought. (Pl.'s Opp'n at 12-13.) Neither argument has merit.

First, courts routinely award parties fees on motions they lose when they otherwise prevail in the litigation. *See, e.g.*, *W. Willow-Bay Ct., LLC V. Robino-Bay Ct. Plaza, LLC*, 2009 WL 458779, at *9 (Del. Ch. Feb. 23, 2009) (awarding "prevailing party" its fees and costs even though prevailing party "was unsuccessful" in certain aspects of litigation). Here, Defendants seek fees and costs for their Rule 11 motion because, as even Ampro concedes (Pl.'s Opp'n at 14 n. 8), that motion was filed in conjunction with Defendants' successful opposition to Ampro's motions to reopen and replead its claim for breach of the Manufacturing Agreement.[4]

Second, under *Deisler v. McCormack Aggregates, Co.*, 54 F.3d 1074, 1087 (3d Cir. 1995), Defendants are entitled to most, if not all, of their fees for work that is attributable to both the Manufacturing Agreement and Development Agreement claims because the Manufacturing Agreement claims represented more than 98% of Ampro's alleged damages. Ampro does not attempt to address or rebut *Deisler*. Ampro instead argues that its claim for $12.7 million in damages under the Manufacturing Agreement was "an estimate" and should not dictate the allocation of fees for blended work. (Pl.'s Opp'n at 13 n.7.) This is nonsense.

In opposition to Defendants' motion to strike its original damages claim for $11 million under the Manufacturing Agreement (D.I. 12 at 18-19), Ampro argued the amount was accurate.[5] (D.I. 22 at 15-16.) Then, in its Amended Complaint, Ampro *increased* its damages claim to $13 million. (D.I. 33 ¶¶ 52, 68, 63.) Ampro cannot now backtrack from a damages claim, which it tried to use as leverage to extort a settlement from Defendants, because today it serves as a basis for Defendants to recover hundreds of thousands of dollars of attorneys' fees and costs as the

---

[4] It also bears noting that Defendants filed their Rule 11 motion in direct response to a threat made by Ampro's counsel to continue asserting the very same alter ego allegations that Defendants had successfully dismissed on two separate occasions if Defendants did not relent to Ampro's settlement demands. (D.I. 194 at 10 and Ex. 7.)

[5] Ampro asserted the same amount in alleged damages in its pre-litigation demand letter, stating the amount was "conservatively low" and "[d]amages are likely much higher." (Ex. 8.)

prevailing party under the Manufacturing Agreement. Ampro is stuck with the damages amount it alleged at multiple stages of this case.

It also is not credible for Ampro to argue that Defendants should not be awarded attorneys' fees and costs for blended work because it would have brought this lawsuit even without the Manufacturing Agreement claims. (Pl.'s Opp'n at 12.) For more than *three years* and on *four different* occasions, Ampro tried to plead a plausible claim for breach of the Manufacturing Agreement at the expense of delaying its Development Agreement claim. Ampro's Manufacturing Agreement claims have always been the driving force behind its lawsuit, and Defendants' fee allocation simply reflects that reality.

Defendants' request for $601,942.29 in attorneys' fees and costs is reasonable under the loadstar formula—again, which Ampro concedes is the appropriate method for calculating such amounts—especially when one considers the number of times Defendants had to defeat those claims (*four*), the number of briefs and hearings it took to achieve that result (*eight*), and the total amount (*$12.7 million*) and overall percentage (*98%*) of alleged damages that they successfully dismissed. The Court should thus grant Defendants' request in its entirety.

## CONCLUSION

Defendants respectfully request this Court enter an Order requiring Ampro to pay $601,942.29 in attorneys' fees and legal costs, as well as fees and costs associated with this motion, in accordance with Section 33 of the Manufacturing Agreement.

Dated: September 11, 2017

OF COUNSEL

REED SMITH LLP
John F. Hagan, Jr.
10 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400
jhagan@reedsmith.com

REED SMITH LLP
John C. Scalzo
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
jscalzo@reedsmith.com

Respectfully submitted,

REED SMITH LLP

 */s/ Brian M. Rostocki*
Brian M. Rostocki (No. 4599)
Benjamin P. Chapple (No. 5871)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7561
Facsimile: (302) 778-7575
brostocki@reedsmith.com
bchapple@reedsmith.com

*Counsel for Defendants LXE, LLC
and Metrologic Instruments, Inc.*